Kerry M. GOUGH, Trustee in Bankruptcy of Louis Rosen, dba Walnut Creek Furniture, Plaintiff-Appellant,

v.

ROSSMOOR CORPORATION et al., Defendants-Appellees.

No. 26475.

United States Court of Appeals, Ninth Circuit.

Oct. 17, 1973.

As Modified on Denial of Rehearing Dec. 28, 1973.

Maxwell Keith (argued), San Francisco, Cal., Anthony J. Mercant, of Mercant & O'Brien, San Jose, Cal., Kerry M. Gough, of Bonjour, Cal., Gough & Stone, Oakland, Cal., for plaintiff-appellant.

John B. Clark (argued), of Miller, Groezinger, Pettit & Evers, San Francisco, Cal., for defendants-appellees.

Before BROWNING, DUNIWAY and GOODWIN, Circuit Judges.

BROWNING, Circuit Judge:

Plaintiff sued defendants for treble damages under section 4 of the Clayton Act (15 U.S.C. § 15) for violation of sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2). The case was submitted to the jury on special interrogatories. The jury responded that defendants had entered into a conspiracy to exclude plaintiff from the business of selling at retail in a local market products produced in other states, that they had restrained plaintiff's retail business to his damage, but that their acts had not had "a substantial effect on interstate commerce or the flow of interstate commerce." Because of this negative answer regarding the effect of defendants' conduct on interstate commerce, the district court entered judgment for defendants. We reverse.

Plaintiff was sole proprietor of a retail store selling carpets, drapes, and household furniture in Walnut Creek, California. Defendants are two members of a group of corporations that buy and sell land and construct, sell, furnish and manage residential developments. These developments are referred to individually and collectively as "Rossmoor Leisure World."

Defendant Rossmoor Corporation is the primary developer. Defendant Crestmark Carpet and Drapery Company is a wholly owned subsidiary of Rossmoor that sells carpets and drapes to residents of Rossmoor Leisure World, including the development in the Walnut Creek area.

All the carpeting sold by plaintiff and defendant Crestmark to residents of the Walnut Creek Rossmoor Leisure World during the relevant period was manufactured outside California and shipped to plaintiff and defendant Crestmark either directly or through in-state wholesalers.[1]

In response to interrogatories submitted under Rule 49(a), Fed.R.Civ.P., the jury found that defendants and their subsidiaries had the power and intention to exclude plaintiff from the business of selling carpeting to residents of the Walnut Creek Rossmoor Leisure World; that they entered into a scheme to prevent plaintiff from advertising in the Leisure World News, a "house" newspaper for that development, "such as to act as a

restraint on plaintiff's business"; and that, as a result, plaintiff suffered some $50,000 damages in loss of profits and good will. However, to the question "Did such restraint have a substantial effect on interstate commerce or the flow of interstate commerce?" the jury answered "No."[2] Judgment was entered for defendants on the ground that this last answer deprived the court of jurisdiction under the Sherman Act.

The jurisdictional issue under the Sherman Act is distinct from the substantive issue of whether a given defendant's conduct was of the kind prohibited by the Act. Rasmussen v. American Dairy Ass'n, 472 F.2d 517, 521–524 (9th Cir. 1973). The jurisdictional issue is one of constitutional power. Congress intended to extend the substantive prohibitions of the Sherman Act to the farthest reaches of its power under the Commerce Clause, thereby mandating for this nation a competitive business economy to the full extent that Congress could do so under its constitutional pow-

---

1. Defendant Crestmark's sales of carpeting and padding to residents of Rossmoor Leisure World at Walnut Creek exceeded $380,000 in 1965, $565,000 in 1966, and $305,000 in 1967. The volume of plaintiff's sales of carpeting to residents of the development is not entirely clear from the record, but defendants conceded at oral argument that such sales were not *de minimis*. Moreover, plaintiff testified, and the jury necessarily found, that such sales would have been substantially greater but for defendants' acts.

2. The written submission to the jury read as follows:

The following questions are being submitted to you for your answer in order to aid the Court in reaching a decision in this matter.

You should recognize that your answers to these questions will be the basis for the Court's decision which will decide whether or not the plaintiff is entitled to recover or not from the defendants.

You are to answer the following interrogatories as applicable. Before any question may be answered, all 12 of the jurors must agree on the answer.

1. Did the defendants and Leisure World Foundation or Golden Rain Foundation by means of a common plan scheme or design

have the power and intention to exclude plaintiff from the carpet and/or other business in Rossmoor Leisure World?

Yes X

No ....

2. Did defendants enter into a common plan, scheme or design with Leisure World Foundation or Golden Rain Foundation to prevent plaintiff from advertising carpets in the Leisure World News such as to act as a restraint on plaintiff's business of selling carpets or other merchandise at Rossmoor Leisure World?

Yes X

No ....

3. If your answer to either of the preceding questions is in the affirmative, did such restraint have a substantial effect on interstate commerce or the flow of interstate commerce?

Yes ....

No X

4. Has plaintiff suffered any monetary damage by reason of its inability to advertise in Leisure World News?

Yes X

No ....

5. If so, please indicate the amount opposite the appropriate type of damage you find to have been suffered.

Net Profits     $18,143.00

Goodwill      22,738.00

er to regulate interstate and foreign commerce. United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 558–559, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). The jurisdictional question, therefore, is whether defendants' conduct had a sufficient relationship to interstate commerce to be subject to regulation by Congress. Rasmussen v. American Dairy Ass'n, *supra*, 472 F.2d at 521. This, in turn, depends upon whether defendants' conduct had a "substantial economic effect" upon interstate commerce or, " 'concerns more States than one' and has a real and substantial relation to the national interest" in a competitive economy. Heart of Atlanta Motel v. United States, 379 U.S. 241, 255, 85 S.Ct. 348, 356, 13 L.Ed.2d 258 (1964), *quoting* Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 196–97, 6 L.Ed. 23 (1824); *see* Rasmussen v. American Dairy Ass'n, supra, 472 F.2d at 522–523. *See, generally,* 1 von Kalinowski, Antitrust Laws & Trade Regulation § 5.01[4] (1969).

■ The substantive issue, on the other hand, is whether defendants participated in anticompetitive conduct of the kind encompassed within the statutory terms "restraint of trade," "monopolize," or "attempt to monopolize." In terms of this case, the substantive question was whether defendants, with the power and intent to exclude plaintiff from the Rossmoor Leisure World Market, entered into a common scheme or plan to restrain plaintiff's business by preventing him from advertising in the Leisure World News, and, if so, whether such conduct was the kind of anticompetitive conduct prohibited by the Act.

■ Thus, although both the substantive and jurisdictional issues are often confusingly described in terms of the "effect" of particular conduct upon commerce, as if a common question were presented, *see, e. g.,* Las Vegas Merchant Plumbers Ass'n v. United States, 210 F.2d 732, 739–740 n. 3 (9th Cir. 1954), the substance of the two inquiries is quite different. An unreasonable restraint on competition may have no impact upon interstate commerce, or an impact so insignificant that regulation under the Commerce Clause is not justified as a means of protecting interstate commerce. Page v. Work, 290 F.2d 323, 331–332 (9th Cir. 1961). Or conduct clearly having a substantial economic impact on interstate commerce may not violate the Act's prohibitions against unreasonable restraints of trade and monopolization. Cartrade, Inc. v. Ford Dealers Advertising Ass'n, 446 F.2d 289, 292 (9th Cir. 1971).

■ When the issue is whether the defendant's conduct violates the norms of the statute, the focus is upon commercial competition: whether the defendant's conduct—"in" or "affecting" interstate commerce or not—unreasonably restrains competition in the market place. When the issue is whether jurisdiction exists, the focus is upon interstate commerce: whether the defendant's conduct—unreasonably restrictive of competition or not—has a sufficient impact on interstate commerce to justify regulation under the Commerce Clause.

■ In the present case, the jury's factual findings that defendants, with the power and intent to exclude plaintiff from the Rossmoor Leisure World market, entered into a common scheme or plan to restrain plaintiff's business by preventing him from advertising in the Leisure World News, established, as a matter of law, that defendants had engaged in the type of anticompetitive conduct that Congress intended to prohibit by the Sherman Act. The jury's further findings that plaintiff suffered monetary damages in a determined amount by reason of defendants' conduct, established, as a matter of law, that plaintiff was among the class of private persons authorized by the Clayton Act to seek redress for such conduct. Defendants do not argue to the contrary.

The sole question here is jurisdictional: did defendants' conduct have a sufficient relationship to interstate commerce to be within Congress' power to regulate, and hence to come within the Sherman Act?

■ Defendants argue that the jury's specific finding that defendants' acts did not have a "substantial effect on interstate commerce or the flow of interstate commerce" is conclusive of jurisdiction. We disagree.

It is doubtful whether the jurisdictional issue should have been submitted to the jury, even had the evidence been in dispute. Except where the jurisdictional issue and the issues on the merits are factually "completely intermeshed," McBeath v. Inter-American Citizens for Decency Committee, 374 F.2d 359, 362–363 (5th Cir. 1967), it may well be the court's function to resolve factual disputes relevant to jurisdiction on motion under Rule 12(b)(1), Fed.R.Civ.P., rather than the jury's function to resolve such disputes in the trial of the case on the merits. *See* Page v. Work, *supra*, 290 F.2d at 334; Bailey's Bakery, Ltd. v. Continental Baking Co., 235 F.Supp. 705, 714 (D.C.Hawaii 1964); 5 Wright & Miller, Federal Practice & Procedure § 1350, at 556–58; 5 Moore's Federal Practice ¶ 38.36 [2.-2], at 298–300; *but see* Marks Food Corp. v. Barbara Ann Baking Co., 274 F.2d 934 (9th Cir. 1959).[3]

Even assuming, however, that the resolution of conflicts in the evidence as to jurisdictional facts is the function of the jury, the jury must be given adequate instructions as to the legal standard to be applied. Ratigan v. New York Central R.R., 291 F.2d 548, 554 (2d Cir. 1961); 5A Moore's Federal Practice, *supra*, ¶ 49.02, at 2206 n. 7; 9 Wright & Miller, Federal Practice & Procedure, *supra*, § 2506, at 502. The interrogatory submitted to the jury in this case (question "3," *supra* note 2) did not inform the jury of the constitutional tests for determining whether the relationship between defendants' conduct and interstate commerce was such as to permit Congress to prohibit defendants' conduct. Nor was the general explanatory instruction given to the jury adequate to this purpose.[4]

■ In any event, there was no conflict in the evidence as to the facts relevant to jurisdiction. The undisputed facts established that the necessary relationship to interstate commerce did exist. In these circumstances, it was error to submit the jurisdictional issue to the jury under Rule 49(a). Wirtz v. La Fitte, 326 F.2d 856, 858–860 (5th Cir. 1964); W. R. Grimshaw Co. v. Nevil C. Withrow Co., 248 F.2d 896, 902–903 (8th Cir. 1957); 9 Wright & Miller, *supra*, at 499. The jury's erroneous answer to the jurisdictional interrogatory should have been ignored. Ratigan v. New York Central R.R., *supra*, 291 F.2d at 554–555; W. R. Grimshaw Co. v. Nevil C.

3. Professor Moore summarizes the policy considerations supporting this view as follows:

As a matter of policy, however, there is much to be said for approaching problems of statutory coverage as triable to the court when reasonably separable from the facts of violation. The difference is this: if coverage is treated as substantive for purposes of mode of trial, the issue of whether a cause of action is stated must be left to the jury in cases in which underlying facts are not in dispute, but different inferences may be drawn from them. Thus on the same business arrangements one case may be decided one way and another in a different way, as the jury may find that the arrangements did or did not affect commerce . . . . Surely these are matters that should be treated as a matter of law so that the perimeter of the statute can be worked out in the appellate courts. When there is . . . in the case of the antitrust case a factual question as to details of the defendant's business activities, such questions could be put to the jury as special interrogatories, or a special verdict employed.

5 Moore's Federal Practice ¶ 38.36 [2.-2], at 300.

4. The only relevant portion of the instructions read (Tr. 1310):

The Sherman Act applies to parties whose acts are in the course or flow of commerce across state lines or whose acts, although local, substantially affect interstate trade and commerce. By substantial the law means not de minimis— not insignificant, an amount more than trifling. The amount of interstate trade involved, if substantial, is not material, since the Sherman Act brands as illegal the character of the restraint, not the amount of commerce affected.

Withrow Co., *supra*, 248 F.2d at 902–905; Albert Pick-Barth Co. v. Mitchell Woodbury Corp., 57 F.2d 96, 99–103 (1st Cir. 1932).

We need not stop to inquire whether retail sales of carpeting to Rossmoor Leisure World residents occurred "in" interstate commerce, for it is clear that defendants' anticompetitive conduct in connection with such sales necessarily had the "substantial economic effect" upon interstate commerce in carpeting requisite to the exercise of federal regulatory power. The retail transactions affected by defendants' conduct were essential to the continued movement of a substantial volume of carpeting from the states of manufacture to the Walnut Creek, California, area. *See* Cartrade, Inc. v. Ford Dealers Advertising Ass'n, *supra*, 446 F.2d at 292. Elimination of competition in these intrastate sales of goods produced in other states inevitably affected the interstate commerce in such goods: "When competition is reduced, prices increase and unit sales decrease," resulting in fewer purchases from out-of-state producers. Burke v. Ford, 389 U.S. 320, 322, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967). By ‘restricting plaintiff's participation in these retail transactions, and eventually excluding plaintiff entirely from this trade, defendants diverted interstate shipments of carpeting from plaintiff to themselves, thus "interfer[ing] with the natural flow of interstate commerce." Klors, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 213, 79 S.Ct. 705, 710, 3 L.Ed.2d 741 (1959). The states in which the carpeting is manufactured as well as the State of California are concerned with the conditions under which carpeting is sold at retail to California residents. And the relationship between the elimination of competition in these retail sales of carpeting at Rossmoor Leisure World and the national interest in the distribution of carpeting in a free competitive economy is not so tenuous as to bar federal intervention, though the market monopolized in this instance was small. *Id.* at 213–214, 79 S.Ct. 705. *See also* Radi-

ant Burners, Inc. v. Peoples Gas Light & Coke Co., 364 U.S. 656, 660, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961).

Jurisdiction under the Sherman Act was therefore clearly present.

The judgment is vacated and the cause remanded for further proceedings consistent with this opinion.