**EVANSTON MOTOR COMPANY, INC., Plaintiff,**

v.

**MID–SOUTHERN TOYOTA DISTRIBUTORS, INC., et al., Defendants.**

No. 74 C 803.

United States District Court, N. D. Illinois, E. D.

Sept. 16, 1977.

Robert S. Atkins of Freeman, Freeman & Atkins, Chicago, Ill., for plaintiff.

Sidney L. Rosenfeld of Solomon, Rosenfeld, Elliott, Stiefel & Engerman, Chicago, Ill., for Mid-Southern, Mid-Central and AMCO.

Reuben L. Hedlund of Hedlund, Hunter & Lynch, Chicago, Ill., for Toyota Motor Sales.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiff, an automobile dealer, has brought this action to recover damages under various provisions of state and federal antitrust laws and the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221 et seq. Defendant Toyota Motor Sales has moved to dismiss plaintiff's third amended complaint; the other defendants have moved to dismiss Counts III and IV. We will dismiss Counts II, III and a portion of Count IV as to all the defendants and grant Toyota Motor Sales' motion to dismiss it from Count IV.

### COUNT I

In Count I, plaintiff alleges that the defendants, Toyota Motor Sales ("TMS"), a Toyota importer, and Toyota distributors, AMCO Industries ("AMCO"), Mid-Southern Toyota Distributors ("Mid-Southern"), and Mid-Central Toyota Distributors ("Mid-Central"), in violation of Section One of the Sherman Act, 15 U.S.C. § 1, conspired and contrived along with unnamed Toyota dealers to "allocate, limit and divide in an unfair, discriminatory and anti-competitive manner the supply of new Toyota automobiles made available for sale and delivery by Mid-Southern and/or Mid-Central to their duly authorized Toyota dealers and to refuse to deal with plaintiff Evanston on substantially the same basis and terms as defendants Mid-Southern and Mid-Central dealt with other authorized Toyota dealers with respect to sales and deliveries of new Toyota automobiles." (Third Amended Complaint, ¶ 11). In furtherance of this conspiracy, TMS is alleged to have directed Mid-Southern and Mid-Central to favor single line dealers (those who handle only Toyota automobiles) over dual line dealers such as plaintiff in the allocation and delivery of new Toyota automobiles. Plaintiff alleges that AMCO, Mid-Southern and Mid-Central complied and delivered substantially greater quantities of automobiles to certain preferred dealers.

TMS contends that Count I must be dismissed because of plaintiff's failure to allege "public injury"—an anti-competitive effect on the relevant market. We disagree. The allegations in Count I support a claim of a group boycott—a per se violation of Section One of the Sherman Act. TMS argues that plaintiff has alleged only a vertical restraint and thus must plead a lessening of competition in the relevant market. We agree with TMS that a pure vertical restraint does not constitute a per se offense, see *Continental T.V., Inc. v. GTE Sylvania, Inc.,* —— U.S. ——, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), but the plaintiff has alleged that other dealers, not named as defendants,[1] were involved in the conspiracy. *See* Third Amended Complaint ¶ 9–11. This added horizontal element places Count I squarely within the holding

1. The dealers allegedly involved in the conspiracy need not be named as defendants in this action. *See National Wrestling Alliance v. Myers,* 325 F.2d 768, 775 (8th Cir. 1963).

of *Klors, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), where an appliance retailer alleged that manufacturers, distributors and another retailer conspired either not to sell to the plaintiff or to sell only at discriminatory prices and on highly unfavorable terms. Rejecting the defendants' argument that plaintiff had failed to show a "public injury," the Supreme Court held that this type of restraint was a per se offense and thus

> it is not to be tolerated merely because the victim is just one merchant whose business is so small that his destruction makes little difference to the economy. Monopoly can as surely thrive by the elimination of such small businessmen, one at a time, as it can by driving them out in large groups.

*Id.* at 213, 79 S.Ct. at 710.

Because we hold that plaintiff has stated a claim in Count I for the per se offense of group boycott, we reject TMS' contention that discriminatory allocation of automobiles does not violate the Sherman Act. TMS' reliance on *David R. McGeorge Car Co., Inc. v. Leyland Motor Sales, Inc.,* 504 F.2d 52 (4th Cir. 1974), is misplaced. *McGeorge* was a "tying case" in which the court held that the plaintiff had failed to show impairment of competition in the "tied product" market—a necessary element to establish the offense of "tying." Moreover, *McGeorge* involved a vertical rather than a vertical-horizontal restraint and thus has no relevance to the case at hand.

## COUNT II

■ In Count II, plaintiff realleges the allegations of Count I, claiming that these acts violated Section 3(2) of the Illinois Antitrust Act, Ill.Rev.Stat. ch. 38, § 60–3(2) (1976). Section 3(2) provides:

Every person shall be deemed to have committed a violation of this Act who shall:

\*      \*      \*      \*      \*      \*

> (2) By contract, combination, or conspiracy with one or more other persons unreasonably restrain trade or commerce.

Relying on Section 11, Ill.Rev.Stat. ch. 38, § 60–11 (1976), which provides: "[W]hen the language of this Act is the same or similar to the language of a Federal Antitrust Law, the courts of this state in construing this Act shall follow the construction given to the Federal Law by the Federal Courts," plaintiff and TMS concur that if this court holds that plaintiff states a claim in Count I under Section One of the Sherman Act, plaintiff also states a claim in Count II under Section 3(2) of the Illinois Antitrust Act. We disagree. Unlike Section One of the Sherman Act, Section 3(2) of the Illinois Antitrust Act clearly prohibits only those conspiracies which *unreasonably* restrain trade or commerce. The clear intent of including the word "unreasonably" was to require a rule of reason analysis and to eliminate the category of "per se offenses" from that provision. *See People ex rel. Scott v. Convenient Food Mart, Inc.,* 21 Ill.App.3d 97, 315 N.E.2d 124, 133 (1974).[2] Therefore, "[c]onduct may be found violative of Section 3(2) only after an examination of the competitive and economic purposes and effects of such conduct." *Bar Committee Comments—1967,* Ill.Annot. Stat. ch. 38, § 60–11 (Smith-Hurd 1970). Because plaintiff has failed to allege facts to support a claim that this alleged conspiracy has an anti-competitive effect in the relevant market, we dismiss Count II for failure to state a claim.

## COUNT III

■ In Count III, plaintiff alleges that the defendants' discrimination against the plaintiff in the delivery of automobiles constitutes an "unfair method of competition"

---

2. *See generally,* Bar Committee Comments—1967, Ill.Annot.Stat. ch. 38, § 60–3 (Smith-Hurd 1970).

in violation of Ill.Rev.Stat. ch. 121½, § 262 (1976).[3] Section 262 provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration should be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

It is clear from a recent Illinois decision, *Fitzgerald v. Chicago Title & Trust Co.,* 46 Ill.App.3d 526, 5 Ill.Dec. 94, 361 N.E.2d 94 (1977), that the Illinois courts in the absence of Illinois precedent will construe the section *in pari materia* with Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a).[4] Thus, we will analyze plaintiff's allegations in Count III to determine whether they support a claim under Section 5 of the Federal Trade Commission Act.[5]

Section 5 was enacted

to supplement and bolster the Sherman Act and the Clayton Act—to stop in their incipiency acts and practices which, when full blown, would violate those Acts, as well as to condemn as "unfair methods of competition" existing violations of them. *FTC v. Motion Picture Advertising Service Co., Inc.,* 344 U.S. 392, 394–95, 73 S.Ct. 361, 363, 97 L.Ed. 426 (1953) (citations omitted). In 1938 the Act was amended to add the phrase "unfair or deceptive acts or practices" to the original prohibition against unfair methods of competition. Thereafter, the Commission was authorized to commence an action under Section 5 on the ground that the practice had an adverse effect on consumers as well as on competition. *See FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972). In either case, an injury to the public, either directly (effect on consumers) or indirectly (effect on competition) must be alleged; the Act is not available to redress a purely private wrong. Because plaintiff has given no indication that the defendants' alleged practices have had or will have an adverse effect on the "public,"[6] Count III is dismissed for failure to state a claim.

## COUNT IV

In Count IV, brought under the Automobile Dealers' Day in Court Act, 15 U.S.C.

---

**3.** Plaintiff brings this Count under Ill.Rev.Stat. ch. 121½, § 270a (1976).

**4.** It is also clear from *Fitzgerald* that, contrary to the assertions of the defendants, Section 262 is not limited to actions between competitors. In *Fitzgerald,* the plaintiffs were buyers and sellers of real property who purchased title reports, title insurance, and other services from the defendant, Chicago Title & Trust Company, through the institutions which finance their transactions. Plaintiffs claimed that the defendant engaged in an unfair method of competition under Section 262 when it paid allowances to those institutions. The Illinois Appellate Court reversed the trial court's dismissal of the complaint, holding that the plaintiffs had stated a claim under Section 262 because the payments violated the basic policy of Section 2(c) of the Clayton Act, 15 U.S.C. § 13(c). The plaintiffs and defendant in that action were not competitors.

**5.** The courts should move very cautiously in construing the broad language of Section 5 of

the Federal Trade Commission Act when it arises outside of the Commission's administrative process. Congress gave the Commission a great deal of latitude in interpreting and enforcing the Act because it believed the Commission as constituted would have the expertise to recognize and remedy practices injurious to the public. *See Atlantic Refining Co. v. FTC,* 381 U.S. 357, 367, 85 S.Ct. 1498, 14 L.Ed.2d 443 (1965). We, however, do not have the benefit of such experience and expertise and should limit ourselves to types of conduct previously adjudged unlawful. *See* Comment, *Violation of the Federal Trade Commission Act as a Defense to Contract Enforcement Actions: The Problem and a Proposal,* 71 Nw.U.L.Rev. 67, 82–85 (1976). The language of Ill.Rev.Stat. ch. 121½, § 262 supports this cautious approach.

**6.** Some practices may be presumed to injure the public and thus such an allegation would be unnecessary. For example, a businessman who "passes off" his goods as those of another—a violation of Ill.Rev.Stat. ch. 121½,

§ 1221 et seq., plaintiff alleges that the defendants violated the Act by establishing a Toyota dealership within six miles of plaintiff's dealership and thereafter giving favorable and preferential treatment to that dealership. Plaintiff further alleges that the defendants intentionally and purposefully and without justification cut plaintiff off from an adequate supply of Toyota automobiles necessary to compete effectively with other Toyota dealers. These acts, plaintiff claims, constitute a breach of defendants' contractual obligations and were undertaken for the purpose of coercing and intimidating plaintiff's president to refrain from participating in and promoting an organization of Toyota Dealers.

■ TMS argues and we agree that TMS is not liable under the Act because it did not sign the franchise agreement upon which plaintiff's claim is based. In *Lawrence Chrysler Plymouth, Inc. v. Chrysler Corp.,* 461 F.2d 608, 613 (7th Cir. 1972), the Seventh Circuit held that an automobile manufacturer who is not a party to the franchise agreement with a dealer is not liable under the Act unless there is a showing that the distributor had the actual or apparent authority under agency theory to bind the manufacturer to the franchise agreement or that the distributor-corporation is merely the alter ego of the manufacturer-corporation under the doctrine of piercing the corporate veil.[7] *See also, Joe Westbrook, Inc. v. Chrysler Corp.,* 419 F.Supp. 824, 831–32 (N.D.Ga.1976). Plaintiff's allegations are insufficient to state a claim against TMS under either exception,[8] and, therefore, TMS is dismissed from Count IV.

■ The other defendants also ask for dismissal from Count IV, asserting that the three year statute of limitations applicable to the Act, 15 U.S.C. § 1223, bars plaintiff's claim. From the face of the complaint, it is apparent that plaintiff's claim that the defendants appointed a Toyota dealer in 1969 within six miles of plaintiff's dealership after "having fraudulently represented to

§§ 312, 262—may be presumed to injure the public in creating confusion as to the origin of the goods. Likewise, a claim that a party violated the letter or spirit of a specific antitrust law, e. g., Section 2(c) of the Clayton Act, 15 U.S.C. § 13(c), may not require the "public injury" allegation because Congress is presumed to have decided that such acts cause injury to the public. *See,* e. g., *Fitzgerald v. Chicago Title & Trust Co.,* 46 Ill.App.3d 526, 5 Ill.Dec. 94, 361 N.E.2d 94 (1977).

Plaintiff, however, cannot avail itself of this latter exception by asserting that it stated a claim in Count III for a group boycott—a per se violation of the Sherman Act. Paragraph 9 of the Third Amended Complaint, realleged in Count III, is too vague and conclusory to supply the horizontal element necessary to state a claim for group boycott. At best, plaintiff has only alleged a vertical restriction on its supply and such a restriction is not a per se violation of the Sherman Act. *See Continental T.V., Inc. v. GTE Sylvania, Inc.,* —— U.S. ——, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). Moreover, we seriously doubt that plaintiff, even with a sufficient horizontal conspiracy allegation, could state a claim under Section 262 on the theory that a violation of the Sherman Act and therefore of the FTC Act has been alleged. The Illinois legislature indicated in Section 3(2) of the Illinois Anti-Trust Act, Ill.Rev.Stat. ch. 38,

§ 60–3(2)(1976), that group boycotts are to be policed under the rule of reason and are not to be treated as per se violations. We believe that it would defeat this intention for the courts to consider group boycotts as per se violations through the "back door" of Section 262. Therefore, plaintiff would also have to allege an anti-competitive effect.

7. Plaintiff argues that this precedent is not binding because it is dicta. A careful reading of the opinion reveals that it is not dicta.

8. It is obvious from *Lawrence Chrysler Plymouth* that the existence of a "control" relationship sufficient to satisfy Section 1221(a) does not in itself justify piercing the corporate veil. The doctrine requires proof of three elements:

[C]ontrol by the parent to such a degree that the subsidiary has become its mere instrumentality; fraud or wrong by the parent through its subsidiary, e. g. torts, violation of a statute or stripping the subsidiary of its assets; and unjust loss or injury to the claimant, such as insolvency of the subsidiary.

*Matter of Bowen Transports, Inc.,* 551 F.2d 171, 179 (7th Cir. 1977). The "control" must indicate "[a]ctual domination, rather than the opportunity to exercise control." *Id.* at 179.

plaintiff that the defendants would not appoint a dealer" there, is barred by the statute of limitations. *See, Hanley v. Chrysler Motors Corp.,* 433 F.2d 708 (10th Cir. 1970). The remaining claims are alleged as "continuing discriminatory practices" and as such they are not barred by the statute. *Cf. Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, 84, 478 F.2d 979, 994 n. 30 (D.C. Cir. 1973).

Accordingly, the claim against TMS in Count IV is dismissed for failure to state a claim; that portion of Count IV concerning the "fraudulent appointment of another dealer" is dismissed as to all the defendants as barred by the statute of limitations. The claim for "continuing discriminatory practices" against Mid-Southern, Mid-Central and AMCO is not dismissed.

### COUNT VI [9]

TMS' motion to dismiss Count VI is puzzling because TMS is not named as a defendant in that Count. Neither party seems to be aware of this; both have addressed the merits of the Count. Because TMS is not named as defendant, we do not believe it is necessary to rule on its motion. However, we point out to the plaintiff that should it name TMS as defendant, the sufficiency of its claim will be tested under the principles of agency.

In summary, Counts II, III and a portion of Count IV are dismissed as to all the defendants for failure to state a claim; Count IV is dismissed as to Toyota Motor Sales for failure to state a claim.

---

**9.** Plaintiff denominated the fifth count of its third amended complaint as "Count VI." To avoid confusion, we will refer to that Count as "Count VI."