**Timothy G. KLING, M.D., Albert Petrone, M.D., Lawrence M. Kerr, M.D., and Thomas Koch, M.D., Plaintiffs,**

**v.**

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation, and McDonough District Hospital, an Illinois municipal corporation, Defendants.**

No. 85–1342.

United States District Court,
C.D. Illinois,
Peoria Division.

Jan. 30, 1986.

unwilling to strike is a permissible basis for it to discriminate in the wage levels it pays its employees.

John H. Bisbee, Macomb, Ill., for plaintiffs.

Daniel G. O'Day, Peoria, Ill., and James H. Sneed, Chicago, Ill., for McDonough Dist. Hosp.

Jack B. Teplitz, Peoria, Ill., and Lawrence R. Samuels, Chicago, Ill., for St. Paul Ins.

## ORDER

MIHM, District Judge.

This case is an antitrust case in which the Plaintiffs allege that the Defendant insurance company and hospital have entered into an agreement which violates federal and state antitrust laws and deprives the Plaintiffs of their civil rights. This case is before the Court upon the Defendant McDonough District Hospital's motion to dismiss counts I and II of the complaint, which are based upon federal antitrust law, and count IV of the complaint, which is based upon the Illinois Antitrust Act. The Plaintiffs' civil rights claim under count III of the complaint is not before the Court in this motion.

The Defendants have argued that the Court should dismiss the Plaintiffs' complaint on the separate grounds that the Court lacks subject matter jurisdiction over the complaint and that the complaint fails to state a claim upon which relief can be granted. Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. With regard to their 12(b)(1) motion, the Defendants argue that the Court lacks subject matter jurisdiction because the Plaintiffs' complaint alleges activity which is wholly local in nature and does not have a substantial and adverse affect upon interstate commerce. In their 12(b)(6) motion to dismiss, the Defendants argue that the Plaintiffs have not sufficiently alleged the necessary elements to raise an antitrust claim. Because this is a complex and complicated area of the law, the Court will discuss the points raised by the Defendants in some detail.

In reaching a decision on the Defendant's motion, the Court takes its cue from the Seventh Circuit case of *Seglin v. Esau*, 769 F.2d 1274 (7th Cir.1985). The

plaintiff in *Seglin*, a physician, had brought an antitrust action against a hospital and numerous other defendants, alleging that the defendants had violated federal antitrust law when they suspended the plaintiff's hospital staff membership and privileges. The defendants responded with a motion to dismiss on the grounds that the federal court lacked subject matter jurisdiction and that the complaint failed to state a claim. The district judge dismissed the complaint for lack of subject matter jurisdiction and for failure to state a claim, and the Seventh Circuit proceeded to affirm on the ground of failure to state a claim. In deciding the ground upon which to base their dismissal of the plaintiff's complaint, the Seventh Circuit noted that there is some uncertainty in the law as to whether the failure of an antitrust plaintiff to adequately allege an "effect on interstate commerce" is a failure to state a claim or a failure to allege subject matter jurisdiction. The court stated:

> "[A]t least two commentators and one federal district court have argued persuasively that a failure to allege an effect on interstate commerce is a failure to state a claim and not a failure to allege subject matter jurisdiction (citations omitted). In the instant case, however, it is unnecessary for us to decide whether rule 12(b)(6) or 12(b)(1) governs the defendant's motion to dismiss, for even if we view this as a Section 12(b)(6) dismissal and consider only the well-pleaded facts of the complaint, plaintiff has simply failed to adequately allege any nexus with interstate commerce." (footnotes omitted). 769 F.2d at 1278–79.

This Court likewise concludes that it is not necessary to determine whether the Defendant's motion is more appropriately a 12(b)(6) or a 12(b)(1) motion because the Court will assume that the Plaintiffs' allegations are true when considering the Defendant's motion to dismiss.

■ The *Seglin* case is also instructive in explaining the standard which a court should use in determining whether an antitrust complaint is sufficient to withstand a Rule 12(b)(6) motion to dismiss. The *Seg-lin* court first pointed out that it is not enough for a plaintiff to merely allege that the defendants acted in concert to temporarily interfere with the plaintiff's employment opportunity in order to withstand a motion to dismiss. Rather, the court said:

> "Under *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed 2nd 80 (1957), and *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491 7 L.Ed 458 (1962), 'a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.' (citations omitted) In practice, this means that a plaintiff cannot survive a rule 12(b)(6) motion merely by alleging bare legal conclusions while failing to set forth facts that 'at least outline or adumbrate' a violation of the Sherman Act. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), quoting *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984)." 769 F.2d at 1279.

Turning, then, to the Defendant's argument that the Plaintiffs failed to allege a sufficient connection with interstate commerce, the Court notes that the Sherman Act, 15 U.S.C. §§ 1 and 2, contains an interstate commerce requirement. According to *Seglin*, "A plaintiff may adequately allege the requirement of 'interstate commerce' either by pleading sufficient facts that the defendants' alleged illegal conduct is 'in interstate commerce' or has a substantial and adverse effect upon interstate commerce. *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 241–42, 100 S.Ct. 502, 508–09, 62 L.Ed.2d 441 (1980); *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 743, 96 S.Ct. 1848, 1851, 48 L.Ed 2d 338 (1976)." 769 F.2d 1278 n. 2.

The Plaintiffs argue that they have alleged sufficient facts to meet both of these tests, but the Court concludes that the complaint fails to meet either of these tests. The focus of the Plaintiffs' complaint is an

alleged agreement between the Defendant hospital and the Defendant St. Paul Fire and Marine Insurance Company which requires that all doctors and dentists with staff privileges at the hospital carry a minimum of $1,000,000 in medical malpractice insurance coverage. The Plaintiffs claim that this agreement is a collective refusal on the part of the Defendants to deal with the doctors and a boycott of the doctors' professional services, resulting in an unreasonable restraint of commerce in violation of § 1 of the Sherman Act. The Plaintiffs also claim that through this agreement, the Defendants have attempted to monopolize, have conspired to monopolize, or in fact, have monopolized the markets for furnishing hospital malpractice insurance and hospital and health care services in violation of § 2 of the Sherman Act. Count IV of the complaint realleges the same activity of the Defendants and alleges that they violate the Illinois Antitrust Act, Ill.Rev.Stat. ch. 38, §§ 60–1—60–7 (1983).

The *Seglin* case is a controlling case on the issue of what constitutes sufficient allegations of a nexus with interstate commerce. In *Seglin*, the court held that the plaintiff had failed to adequately allege any nexus with interstate commerce, explaining that antitrust plaintiffs are required to be specific as to the facts of the interstate commerce nexus before the court would compel defendants to engage in protractive expensive antitrust discovery. 769 F.2d at 1283. The court noted that the only facts alleged by the plaintiff were that the hospital suspended him and that the defendants provide psychiatric services to patients who travel in interstate commerce to receive such services, purchase equipment in interstate commerce, and receive insurance payments through interstate commerce. In response to the plaintiff's contention that the interstate commerce nexus requirement had been satisfied by his allegations that several of defendant's activities are in interstate commerce, the *Seglin* court said that for purposes of establishing the interstate commerce nexus " 'the inquiry must be whether the defendants' activity that has allegedly been "infected" by unlawful

conduct can be shown " 'as a matter of practical economics' to have had a not insubstantial effect on the interstate commerce involved." ' *Furlong v. Long Island College Hospital,* 710 F.2d 922, 926 (2nd Cir.1983), quoting *McLain v. Real Estate Board of New Orleans, Inc.,* 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed 2d 441 (1980). Thus, to survive a motion to dismiss, the 'plaintiff must allege sufficient facts concerning the alleged violation and its likely effect on interstate commerce to support an inference that the defendants' activities infected by illegality either have had or can reasonably be expected to have a not insubstantial effect on commerce.' *Id.*" 769 F.2d at 1280.

The *Seglin* court compared the specificity of the facts alleged in the case before it with the facts as alleged in complaints in other cases in which Courts had sustained the adequacy of the complaint. As a result, the Seventh Circuit concluded that Dr. Seglin's complaint was insufficient because it was framed in terms of conclusory statements rather than specific facts. In a footnote, the court suggested that the court is not required to speculate as to the many possible facts that might have been alleged by the plaintiff, saying:

"[I]n the instant case plaintiff might have alleged, for example, how many patients he treated at the defendant hospital, what percentage of his patients are from out of state, how much of his own revenue came from out-of-state insurers, at what other hospitals he had admitting privileges, or what particular acts of defendants have led to his *de facto* permanent suspension from the hospital. Instead, he chose to allege only the bare fact of his suspension and then ask this court to speculate as to the rest.... Unless the plaintiff admitted a substantial number of patients to the defendant-hospital and could not have admitted them elsewhere, his suspension or exclusion from the hospital could not substantially affect any of defendants' interstate activities. On the other hand, it might possibly affect plaintiff's interstate activities;

but this plaintiff would know, and he should have pleaded it." 769 F.2d at 1283 n. 11.

Similarly, in the instant case, the complaint lacks adequate facts which indicate a not insubstantial connection between the Defendants' alleged illegal activities and their activities in interstate commerce. The *Seglin* case gives some indication of the specificity with which an antitrust plaintiff must plead facts in his complaint. The Plaintiffs' allegation that the Defendants are involved in treating out-of-state patients and obtain goods and services through interstate commerce are the same type of general allegations or conclusory statements which the court dismissed as insufficient in *Seglin*. Therefore, the Court concludes that the Plaintiffs in the present case have failed to adequately allege that the Defendants' alleged illegal conduct would have a not insubstantial effect on interstate commerce.

■ The Court also rejects Plaintiffs' contention that the alleged illegal activity of the Defendants is itself "in interstate commerce" simply because the alleged agreement to require minimum insurance coverage involved an agreement between the hospital and the out of state insurance company. The Court is not persuaded by the Plaintiffs' argument that the alleged agreement itself is in interstate commerce, by virtue of the fact that the home office of the insurance company is in another state. The effect of the alleged unlawful agreement setting the requirement of a minimum level of malpractice insurance would be felt only locally by the hospital and its doctors, which means that the requirement itself is not "in interstate commerce."

■ The Plaintiffs' failure to allege specific facts indicating a sufficient nexus between their claim and interstate commerce is a sufficient ground for the Court to grant the Defendants' motion to dismiss counts I and II. In addition to dismissing those counts, the Court also dismisses count IV brought under the Illinois Antitrust Act under the principles of pendent jurisdiction and *United Mine Workers v.*

*Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Nevertheless, because the Court grants the Plaintiffs the opportunity to replead their complaint, the Court will discuss the other points raised by the Defendant in its motion to dismiss.

■ The Defendants argue that even if the Plaintiffs have alleged specific facts to indicate an effect upon interstate commerce, they have failed to allege the necessary elements for a violation of § 1 of the Sherman Act. Specifically, the Defendants argue that even though the Plaintiffs characterize the Defendants' action as a boycott and refusal to deal, they have failed to allege a per se violation of the Sherman Act. Therefore, the Court must look to a rule of reason analysis in order to determine the sufficiency of the complaint, and, according to the Defendants, the Plaintiffs' complaint lacks a proper allegation of the element of anticompetitive effects upon the market.

The Plaintiffs respond by saying that their complaint does make out a per se violation of the Sherman Act because the Defendants' agreement to impose a minimum insurance requirement on physicians and dentists constitutes a boycott or a concerted refusal to deal. The Plaintiffs cite the case of *St. Paul Fire & Marine Insurance Co. v. Barry,* 438 U.S. 531, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978), for the proposition that a boycott is a "method of pressuring a party with whom one has a dispute by withholding, or enlisting others to withhold, patronage or services from the target." 438 U.S. at 541. The Court then went on to state that "the enlistment of third parties in an agreement not to trade as a means of compelling capitulation by the boycotted group, long has been viewed as conduct supporting a finding of unlawful boycott." *Id.* at 544, 98 S.Ct. at 2931. Finally, the *Barry* Court observed that the labor-boycott cases establish that the boycotters and the ultimate target may not be in a competitive relationship with each other. *Id.* at 543, 98 S.Ct. at 2930. The Plaintiffs argue that the agreement between the Defendants falls within this lan-

guage of the Court and that, therefore, the activity alleged in the complaint is an illegal boycott which is a per se violation of the Sherman Act.

The United States Supreme Court, in the case of *Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982), explained what it meant by a per se violation of the Antitrust Act. According to the Court, "Once experience with a particular kind of restraint enables the Court to predict with confidence that the rule of reason will condemn it, it has applied a conclusive presumption that the restraint is unreasonable." 457 U.S. at 344, 102 S.Ct. at 2473. This principle of per se unreasonableness allows Courts "to avoid the necessity for an incredibly complicated and prolonged economic investigation into the entire history of the industry involved." *Id.* at 351, 102 S.Ct. at 2476. Thus, for such per se violations, an adverse effect on competition is presumed to exist as a matter of law. *Continental TV, Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49–50, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977).

Even though the Supreme Court has found certain group boycotts per se illegal, *see, e.g., Fashion Originators' Guild of America, Inc. v. FTC*, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941); *Klors, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), most cases applying a per se rule involve price fixing or agreements among competitors. Neither of these situations exist in the present case, because there is no agreement as to price nor is the insurance company in competition with the hospital. Because of these facts, and also because the Court has difficulty in characterizing this alleged agreement as a "group boycott," the Court concludes that this case is inappropriate for the application of the per se rule to the alleged agreement.

The Court refuses to accept the Plaintiffs' position that the alleged agreement constitutes a boycott and is therefore a per se violation, because such a position would allow any plaintiff to claim a per se anti-trust violation on the basis of allegations of group activity. Moreover, an agreement of the type alleged in the complaint is not the kind of restraint with which courts have had experience in the past, because this particular agreement does not at all resemble a price fixing restraint or an agreement among competitors. Therefore, the Court cannot conclude with confidence that the restraint is per se unreasonable, and the Court must instead analyze the alleged illegal agreement under a rule of reason approach.

■ The Supreme Court in the *Maricopa County Medical Society* case acknowledged that courts have analyzed most restraints under the so-called "rule of reason." This rule requires the fact-finder to decide whether under all the circumstances of the case the restrictive practice imposes an unreasonable restraint upon competition. This analysis involves an inquiry into the facts peculiar to the business to which the restraint is applied, the business' condition before and after the restraint was imposed, and the nature of the restraint and its effect, actual or probable. 457 U.S. at 343 n. 13, 102 S.Ct. at 2472 n. 13. Under this approach, a plaintiff must plead and prove the anticompetitive effect of the alleged restraint; in the present case, this means that the Plaintiffs must plead that the Defendants' activity in allegedly agreeing to impose a minimum medical malpractice insurance limit will result in an unreasonable restraint upon competition in the relevant market.

The Plaintiffs contend that they have properly alleged the anticompetitive effects of the Defendants' alleged agreement. In the complaint, Plaintiffs allege that a number of results will follow from the Defendants' agreement, including: requiring physicians to incur premium increases in order to reach the minimum level of malpractice insurance coverage; artificially and unreasonably increasing the cost of health care services, and unreasonably diminishing the quality of health care services and facilities within the relevant market due to the increased cost to physicians. The Plaintiffs

1292

add that they will be injured in their business and may eventually be forced to withhold medical services in the relevant market area or to move elsewhere in order to engage in the practice of medicine.

For purposes of a motion to dismiss, the Court must accept the Plaintiffs' well-pleaded allegations as true, but even assuming that the alleged agreement will have the results indicated by the Plaintiffs, the Court does not feel that these are the types of harms which the antitrust statutes were meant to redress. The consequences alleged by the Plaintiffs are not a result of the requirement that physicians carry a minimum limit of malpractice insurance as such; rather, they would be the result of the physicians' refusal to pay for this minimum level of malpractice insurance or their desire to retain the same profit margin while agreeing to pay for the increased insurance. The antitrust statutes are meant to protect competition, not competitors, *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962), and the harm alleged in the complaint is really only harm to the individual doctors and not to competition within the marketplace. As is made clear in *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1109 (7th Cir.1984), the Sherman Act was written to give redress to victims of antitrust activity only when there is a generalized injury to the market. The Plaintiffs have failed to allege any injury of this sort, and the Court agrees with the court in *Pollock v. Methodist Hospital*, 392 F.Supp. 393 (E.D.La.1975), a case similar on all fours with the present case, that it is unable perceive how the adoption of a requirement that staff physicians carry a minimum level of insurance becomes an antitrust violation.

Lastly, the Court finds that the Plaintiffs' complaint is inadequate in alleging a monopoly claim under § 2 of the Sherman Act. The Plaintiff argues that the existence of the agreement between the Defendant insurance company and hospital creates an inference that the Defendants have monopoly power and are using the

agreement as a means of attempting to monopolize or maintain a monopoly in the relevant market area. Nevertheless, the Court finds the complaint severely lacking in specific facts which indicate the market power of the Defendants in the relevant market area. Perhaps more harmful to the Plaintiffs' complaint, however, is a lack of factual allegations as to how the Defendants are using the alleged agreement in order to obtain or maintain their monopoly power. There is no indication in the complaint that physicians and dentists who would come under the hospital's requirement would be required to obtain the insurance from a specific insurance provider or group of providers, and it appears to the Court that other insurance providers are in fact available. The Court is even more at a loss to understand how the agreement can be of any aid to monopoly efforts by the hospital, since the hospital cannot control whether individual physicians will comply with the requirement and obtain privileges at the hospital or not comply with the requirement and practice medicine elsewhere.

Because of the similarity which exists in the interpretation of the Illinois Antitrust Act and the Sherman Act, the Court holds that because the Plaintiff has failed to state a claim under §§ 1 and 2 of the Sherman Act, the Plaintiffs have also failed to state a claim under the Illinois Antitrust Act.

In conclusion, the Court orders that the Defendants' motion to dismiss counts I, II and IV of the complaint is GRANTED. It is further ordered that the Plaintiffs have until February 25, 1986, in which to replead and remedy the deficiencies in their prior complaint.