Argued May 9, affirmed July 12, 1977

BONDS, *Appellant,*
*v.*
LANDERS, *Defendant,*
BROOKS, *Respondent.*
(TC CC 74-288, SC 24677)

566 P2d 513

Nicholas D. Zafiratos, Astoria, argued the cause for appellant. With him on the brief were Zafiratos & Roman, Astoria.

Lawrence M. Dean, Astoria, argued the cause for respondent. With him on the brief were McDonald, Dean, McCallister & Snow, Astoria.

Before Denecke, Chief Justice, and Bryson, Linde and Campbell, Justices.

CAMPBELL, J., Pro Tempore.

**CAMPBELL, J.,** Pro Tempore.

The plaintiff filed an action against the defendants, Lewis A. Landers and Barbara Brooks, to collect the balance alleged to be due on a promissory note in the amount of $9,500. The defendant Brooks answered and admitted the execution of the note and denied the balance of the complaint. By affirmative answer, defendant Brooks alleged no liability by virtue of a limited partnership and lack of consideration for the execution of the note. By way of a cross-complaint against plaintiff and defendant Landers, it was alleged by defendant Brooks that Bonds and Landers had conspired to defraud her by selling to her a 25 percent interest in the Oregon Health Spas, Inc., for the sum of $10,000. The defendant Landers failed to appear against the cross-complaint and was defaulted.

The jury returned a verdict for defendant Brooks on both the complaint and the cross-complaint. Judgment was entered dismissing plaintiff's complaint and giving defendant Brooks a money judgment against the plaintiff for $9,600 as damages.[1]

The plaintiff has appealed to this court. As to fact questions, our right of review is limited by Oregon Constitution, Art VII (Amended), § 3: "* * * [N]o fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict. * * *"

The jury in this case could have found from the evidence the following facts:

The plaintiff, Bonds, and the defendant Landers purchased the Oregon Health Spa in Astoria in July 1973 for $3,500. The plaintiff paid $500 down and during the next six months an additional $217 was paid on the purchase price from business income.

---

[1] Brooks had paid Bonds $10,000 for a one-fourth interest. After Brooks decided that she had been defrauded, Landers voluntarily repaid her $400.

[ 171 ]

The defendant Brooks joined the Oregon Health Spa in October 1973 as a customer member. In December of that year Brooks was approached by Landers and was asked if she "would be interested in buying into the health spa." Brooks was informed and believed that Bonds and Landers were equal partners.

Landers furnished to Brooks an income and balance sheet for the Oregon Health Spa. This sheet was prepared by an accountant from information furnished by Bonds. As of November 30, 1973, it showed leasehold improvements and equipment at a value of $22,533, listed accounts payable at $1,850.89, capital investment of $16,124.62 and a net profit of $6,270.88 for a four-month period. Testimony at the trial showed that the leasehold improvements and equipment were worth $2,500 to $3,500, the accounts payable were approximately $8,000, and the capital contribution did not exceed $4,000.

Brooks was told that the Oregon Health Spa was worth $40,000 and that she could buy Bonds' one-half interest for $20,000. She was told that she could easily make $3,000 per month profit on her investment. Brooks was told that speed was important because the Spa was having a good month and that Bonds wanted his money out to invest in another health spa in Walla Walla.

On February 1, 1974, Bonds, Landers and Brooks met in the law office of Brooks' attorney. Brooks paid Bonds $10,000 cash for a one-fourth interest in the Oregon Health Spa. Landers and Brooks then changed the name of the business to New Oregon Fitness Center. A certificate of limited partnership was executed showing Landers as a general partner and Brooks as a limited partner with a contribution of $10,000 and an option to Brooks to contribute an additional $10,000 capital at the rate of $500 per month.

Brooks and Landers then executed and delivered to

Bonds the $10,000 promissory note which is now the subject of the plaintiff Bonds' complaint. The note is payable in installments of $500 per month commencing March 1, 1974. It is signed by Landers and Brooks, individually and as "dba New Oregon Fitness Center."

Brooks in her testimony explained the promissory note for the additional $10,000 as follows:

"Q Okay. Now, first, I may have missed it: How were you to become obligated for the additional $10,000? Was that discussed?

"A I didn't have to become obligated at all.

"Q Was that discussed?

"A Yes. It was discussed that I did not have to invest another penny from that day on. At that moment I owned one-fourth of the business, and that could stay right there.

"Q And how would you become—how were you to become involved in the other $10,000?

"A If the profits lived up to what I believed they were going to be—and I thought that this $3,000 a month, I was going to make that—I had no doubts that I would want to buy the other one-fourth of the business, because in my mind I was going to be able to pay the spa off and own a full one-half of it within about three or four months, and—

"Q Well, was this something that you could elect to do at any time in the future?

"A Totally. I could stop at any time I chose.

"Q And was that discussed in front of Mr. Bonds?

"A Yes, this was."

Brooks made the March payment of $500 to Bonds and then refused to make any more payments. This litigation was the result.

The plaintiff's first three assignments of error all involve the question of the admissibility of parol evidence by the defendant Brooks to explain her theory of limited liability in connection with the promissory note. Assignments of error numbers four and five refer to exceptions taken to jury instructions relating to the communications between partners and

on behalf of the partnership. The sixth assignment claims that the trial court erred in failing to strike defendant Brooks' cross-complaint for failure to prove a conspiracy. Assignment of error number seven alleges there was insufficient evidence to justify the verdict in favor of the defendant Brooks on the cross-complaint. Number eight states the court erred in failing to grant plaintiff's motion for a new trial. The motion for a new trial was a composite of the first seven assignments of error.

Assignments of error numbers four and five are without merit. There was ample evidence from which the jury could have found that Bonds and Landers were partners in the Oregon Health Spa. The instructions given by the trial court correctly stated the law.

After the taking of the testimony and the parties had rested, the plaintiff moved to strike the defendant Brooks' entire cross-complaint on the ground that there was no proof of any conspiracy between Bonds and Landers. This motion was denied and has been designated as assignment of error number six.

> "A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means." 15A CJS 596, Conspiracy § 1(1), citing *Bliss v. Southern Pacific Co.,* 212 Or 634, 321 P2d 324 (1958); *Pitts v. King,* 141 Or 23, 15 P2d 379, 15 P2d 472 (1932).

15A CJS 599, Conspiracy § 1(2) sets out the elements of a civil conspiracy:

> "* * * In general, to constitute a civil conspiracy there must be: (1) Two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. * * * *"

The primary purpose of a conspiracy must be to cause injury to another. *Heitkemper v. Central Labor Council,* 99 Or 1, 192 P 765 (1921). In a civil conspiracy

a criminal act is not necessary to establish liability. 15A CJS 610, Conspiracy § 7. A civil conspiracy is not an independent tort, in the absence of a statute or unusual circumstances. *Bliss v. Southern Pacific Co., supra* at 642. The damage in a civil conspiracy flows from the overt acts and not from the conspiracy. *Hoffman v. Halden,* 268 F2d 280, 295 (9th Cir 1959), *overruled on a different issue, Cohen v. Norris,* 300 F2d 24, 30 (9th Cir 1962).

> "One who has conspired with others to cheat and defraud will in a proper case be held liable therefor. * * *
>
> "\* \* \* \* \*
>
> "Generally speaking, the action is maintainable against persons who enter into a compact to defraud by overvaluing property, such as corporate stock, and by falsehood and device induce a plaintiff to make a transaction without inspection or full examination of the property involved, or without consulting counsel." 15A CJS 613-15, Conspiracy § 9.

■■ We hold that there is evidence in this case from which the jury could find that Bonds and Landers conspired to defraud Brooks. It is not necessary to establish by the direct testimony of witnesses the existence of every fact in a lawsuit. *Dodge v. Tradewell Stores,* 256 Or 514, 474 P2d 745 (1970).

Assignment of error number seven claims there was insufficient evidence to justify a verdict for the defendant Brooks on her cross-complaint. The plaintiff's argument breaks down into two parts: (1) the evidence must be clear and convincing, citing *Bell v. Spain,* 110 Or 114, 222 P 322, 223 P 235 (1924); and (2) that the defendant Brooks had a duty to investigate the statements made by the sellers, citing *Castleman v. Stryker,* 109 Or 207, 219 P 1084 (1923). These are simply questions of fact which were submitted to the jury and decided adversely to the plaintiff. The trial court gave an instruction on clear and convincing evidence.

The plaintiff in his assignments of error has built a

house of cards. When he fails to prove error in connection with the defendant Brooks' cross-complaint awarding her the return of her original investment by way of damages in the amount of $9,600, then the plaintiff's complaint for the collection of the promissory note must necessarily fail because the jury has found fraud in the inducement and there is no consideration for the note. The defendant Brooks' second affirmative defense alleged failure of consideration based upon fraud. This result is consistent with the jury verdict. *See McGilchrist v. Fiedler,* 155 Or 616, 65 P2d 388 (1937); ORS 73.3060.

It therefore becomes unnecessary to consider assignments of error numbers one, two. three and eight.

The judgment of the trial court is affirmed.