Richard L. BUNCH, Plaintiff,

v.

ARTEC INTERNATIONAL CORPORA-TION, Dictaphone Corporation and Pitney Bowes Inc., Defendants.

WORD SYSTEMS, INC., Plaintiff,

v.

ARTEC INTERNATIONAL CORPORA-TION, formerly a California Corporation, Dictaphone Corporation (Del.), a Delaware Corporation, Pitney Bowes Inc., a Delaware Corporation, Defendants.

Nos. 82 Civ. 2211(JMC), 81 Civ. 7439(JMC).

United States District Court, S.D. New York.

Jan. 26, 1983.

Greenfield & Chimicles, P.C., Bala Cynwyd, Pa. (Nicholas E. Chimicles, Bala Cynwyd, Pa., of counsel) for plaintiffs.

Wachtell, Lipton, Rosen & Katz, New York City (Bertram M. Kantor, Paul E. Levine, Daniel N. Perlmutter, New York City, of counsel) for defendants.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Defendants' motion to dismiss plaintiff Word Systems, Inc.'s ["Word Systems"] complaint is granted in part and denied in part. Fed.R.Civ.P. 12(b)(6).

Defendants' motion to dismiss plaintiff Richard L. Bunch's ["Bunch"] complaint is granted in part and denied in part. Fed.R. Civ.P. 12(b)(6).

## FACTS

Word Systems and Bunch commenced separate actions against defendants alleging violations of the Sherman Act, 15 U.S.C. § 1, breach of contract, tortious interference with business relationships, civil conspiracy, trade libel, fraud, unfair competition and breach of warranty. Although plaintiffs allege different facts in support of their respective complaints, both in essence, are based on the same actions by defendants—the termination of plaintiffs as independent distributors of word processors for defendant Artec International Corporation ["Artec"]. Plaintiffs allege that defendants, through a series of acquisitions and mergers, unlawfully conspired and contracted to deprive plaintiffs of certain rights and to eliminate them as defendants' competitors in restraint of trade and commerce.

The following relevant facts are culled from plaintiffs' complaints: On January 25, 1978, Artec, a small manufacturer of word processing equipment, agreed to make Word Systems its exclusive dealer for marketing and servicing Artec products in the southeast Pennsylvania region.[1] Similarly, on September 4, 1979, Artec appointed Bunch as its exclusive agent for the marketing and servicing of Artec's products in the Seattle area.[2] Pursuant to these agreements, plaintiffs purchased Artec equipment for resale and, in the case of Word Systems, underwrote a series of rental financing agreements and provided Artec with technical and sales assistance.

Defendant Pitney Bowes, Inc. ["Pitney Bowes"], a leading manufacturer of postage meters and related mailing equipment, acquired defendant Dictaphone Corporation ["Dictaphone"] a manufacturer of dictating and voice processing systems in May 1979. Dictaphone thereafter became a wholly-owned subsidiary of Pitney Bowes. Plaintiff contends that in January 1980, Pitney Bowes acquired Artec in an effort to expand its operations in the business equipment market. After the acquisition of Artec in February 1980, responsibility for marketing Artec products was transferred to Dictaphone even though Dictaphone had no experience in either marketing or servicing of Artec's word processing equipment. Plaintiffs allege that prior to the acquisition of Artec, defendants agreed to replace Artec's network of dealers and distributors. Thereafter, Bunch claims that Dictaphone, without justification, revoked his exclusive dealership along with several other Artec dealers. Word Systems, however, continued to act as Dictaphone's southeast Pennsylvania Artec dealer and on July 17, 1980, was appointed Dictaphone's exclusive dealer for the same territory.[3] Bunch entered into a similar agreement with Dictaphone on September 8, 1980.

Plaintiffs claim that beginning in the fall of 1980, defendants illegally modified the terms of their sales agreements in order to terminate plaintiffs and other independent Artec dealers. For example, plaintiffs assert that defendants conspired to raise sales quotas, reduce plaintiffs' commission rates, modify credit agreements between plaintiffs and defendants and denied plaintiffs necessary technical assistance with respect to Dictaphone and Artec products. In addition, plaintiffs contend that Dictaphone began marketing Artec word processors in violation of plaintiffs' exclusive dealer agreements with Artec. Plaintiffs allege that they were only allowed to continue as

---

1. The dealership agreements signed by Word Systems and Artec defined southeast Pennsylvania to encompass the State of Delaware and eight Pennsylvania counties, including Philadelphia. *See* Complaint, 81 Civ. 7439 (JMC), Exhibits I, II (filed Nov. 30, 1981) [hereinafter "Word Systems Complaint"].

2. *See* Amended Complaint, 82 Civ. 2211 (JMC), ¶ 20 (filed June 2, 1982) [hereinafter "Bunch Complaint"].

3. This agreement also reduced the territory in which Word Systems was to market Artec products—limiting Word Systems to Delaware and three Pennsylvania counties. *See* Word Systems Complaint, Exhibit V. The Court further notes that plaintiffs asserted no facts in their respective complaints to support their claim that they were "coerced" into signing these new agreements. *Id.,* ¶ 37; Bunch Complaint, ¶¶ 30–31.

Artec dealers until Dictaphone was able to develop an expertise in the marketing and servicing of word processors. Plaintiffs argue that defendants engaged in the aforementioned conduct for the sole purpose of eliminating plaintiffs as defendants' competitors, thereby violating the Sherman Act. Bunch further alleges that defendants terminated his dealership in an attempt to reap the benefits of Bunch's efforts to sell approximately $600,000 worth of word processors to a national hotel chain.

Plaintiffs also claim that Artec breached its dealership agreements with plaintiffs because they were never notified that Artec purportedly assigned its contractual rights to Dictaphone; thus, making Dictaphone's attempted termination of plaintiffs as Artec dealers void. Alternatively Bunch argues, assuming there was a valid assignment from Artec to Dictaphone, that he was terminated without just cause. Word Systems contends, that because it was not notified that its dealership agreement had expired, the intent of the parties was to continue the agreement, thereby making Dictaphone's May 22, 1981 termination letter a nullity.[4]

Plaintiffs further allege that defendants tortiously interfered with prospective and actual business relationships. Without specifying any particular contracts, Word Systems contends that it has been deprived of revenues it otherwise would have received had the dealership agreements been fully performed. Similarly, Bunch contends that defendants deliberately engaged in acts intended to destroy his business, thereby depriving him of revenues he otherwise would have received.

Both complaints also allege that defendants participated in a civil conspiracy intending to harm plaintiffs in their respective businesses. In essence, plaintiffs assert that defendants, knowing that they were going to terminate all independent Artec dealers, wrongfully induced plaintiffs to continue to work on behalf of Artec and Dictaphone. Plaintiffs contend that defendants engaged in such conduct in order to "reap the benefits of the labor performed by [plaintiffs]."[5] Both complaints further allege that defendants libeled and defamed plaintiffs. Both plaintiffs, without specifying the alleged defamatory statements made by defendants, assert that defendants informed plaintiffs' customers, that plaintiffs were being replaced by Dictaphone and that customer service would significantly improve as a result. Although both complaints assert that these statements will divert plaintiffs' customers to Dictaphone, blacken plaintiffs' reputation and expose them to public ridicule, neither complaint asserts that the alleged defamatory statements were false.[6]

Bunch also asserts that defendants engaged in acts of unfair competition because "[d]efendants conspired and agreed to embark on a calculatedly designed plan to compete unfairly with plaintiff, and did in fact in this manner unfairly compete with plaintiff."[7] Bunch contends that he suffered damages as a result of this conduct.

## DISCUSSION

*Sherman Act Claims*

Initially, the Court notes that the essence of a section one Sherman Act claim is a combination or agreement between two or more parties in restraint of trade or commerce. *See Oreck Corp. v. Whirlpool Corp.,* 639 F.2d 75, 78 (2d Cir.1980), *cert.*

---

4. On January 25, 1978, Word Systems agreed to act as Artec's exclusive dealer for a term of three years. Defendants argue that the May 22, 1981 termination letter merely reflects Dictaphone's intention to allow Word Systems' dealership contract to lapse. Word Systems Complaint, Exhibit 5 ("We note that the Agreement providing for Word Systems' Sales and Service Agency for Artec and Dictaphone products have expired effective December 31, 1980").

5. Word Systems Complaint, ¶ 69; Bunch Complaint, ¶ 79.

6. Both complaints assert claims of fraud and Word Systems also asserts a claim for breach of warranty—none of which are the subject of the instant motions.

7. Bunch Complaint, ¶ 84.

*denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981). In addition, unless defendants' conduct is manifestly anticompetitive, that is, having a "pernicious effect on competition and a lack of any redeeming virtue," *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958), the Court must apply the "rule of reason" standard to determine whether plaintiffs' termination constituted an unreasonable restraint on competition, *see Copy-Data Systems, Inc. v. Toshiba America, Inc.,* 663 F.2d 405, 408–09 (2d Cir.1981) ["*Copy-Data*"]; *Borger v. Yamaha International Corp.,* 625 F.2d 390, 396–97 (2d Cir.1980); *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.,* 602 F.2d 1025, 1030–31 (2d Cir.1979). The Court further notes that merely because a dealer's termination may contain elements of a horizontal restriction, it does not become a *per se* violation of the Sherman Act, thereby obviating the requirement that plaintiffs establish that defendants' conduct is manifestly anticompetitive. *See Broadcast Music, Inc. v. Columbia Broadcasting Systems, Inc.,* 441 U.S. 1, 9, 99 S.Ct. 1551, 1556–57, 60 L.Ed.2d 1 (1979); *Copy-Data, supra,* 663 F.2d at 409. *See also Medical Arts Pharmacy, Inc. v. Blue Cross & Blue Shield, Inc.,* 675 F.2d 502, 505 (2d Cir.1982) (per curiam).

In response to defendants' motions to dismiss, plaintiffs argue that their termination constituted a horizontal division of markets and, therefore, a *per se* restraint of trade. Although not alleged in their complaint, plaintiffs assert that because they are "competitors" of defendants—their termination cannot be characterized simply as a decision by a supplier to alter its distribution system.

The complaint alleges that Pitney Bowes and Dictaphone had no experience, prior to the acquisition of Artec, in either the marketing or servicing of word processors. The pleadings further reveal that Pitney Bowes acquired Artec in an attempt to expand its operations *into* the word processing market. Thus, the Court can see no basis for plaintiffs' contention that they were defendants' competitors prior to the acquisition of Artec. Moreover, the post-acquisition activities of the parties clearly cannot be characterized as those of competitors. The July 17, 1980 agreement between Dictaphone and Word Systems and the September 4, 1980 agreement between Dictaphone and Bunch evidence a supplier-dealer relationship. The agreements establish sales quotas, commission rates and define the market where Word Systems and Bunch were to sell a new Artec word processor.[8] The complaint does not allege that these agreements, whether "wittingly" or "unwittingly" signed, constitute a horizontal division of markets.[9] Accordingly, the Court declines plaintiffs' invitation to treat their termination as a horizontal rather than a vertical restriction.

■ Plaintiffs argue at some length that dismissal of their antitrust claims is inappropriate because proof of a conspiracy is possible even though defendants are, in reality, one company. Plaintiffs contend *first,* that defendants' conspiracy commenced prior to their acquisition of Artec, and *second,* that defendants are separate entities for the purposes of the Sherman Act and, therefore, capable of conspiring to violate the antitrust laws. Assuming *ar-*

**8.** Word Systems Complaint, Exhibit IV; Joint Memorandum of Plaintiffs in Opposition to Defendants' Motion to Dismiss the Complaints, Exhibit B (filed June 16, 1982) [hereinafter "Joint Memo in Opposition"].

**9.** Nor is there any support for plaintiffs' assertions that they were "unwilling coconspirators" with defendants. Word Systems' Answers to Interrogatories clearly belie the claim that its termination constituted a horizontal division of markets between competitors. *See* Plaintiff's Answers and Objections to Defendants' First Set of Interrogatories, ¶¶ 5, 6(b) (filed Apr. 1,

1982). *See also* Word Systems Complaint, ¶ 16; Bunch Complaint, ¶ 17. Furthermore, because plaintiffs' terminations were part of a vertical rather than horizontal integration, plaintiffs' reliance on *Klors, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), is misplaced. *See Oreck Corp. v. Whirlpool Corp.,* 579 F.2d 126, 131 (2d Cir.), *cert. denied,* 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978); *see also White & White, Inc. v. American Hospital Supply,* 540 F.Supp. 951, 1033–34 (W.D.Mich.1982).

*guendo* that defendants are capable of conspiring to violate the Sherman Act,[10] the Court finds that plaintiffs' complaints fail to allege or establish, given their factual allegations, that plaintiffs' termination had an anticompetitive purpose or effect.

Plaintiffs do not quarrel with the general proposition that a manufacturer can unilaterally terminate a dealer or distributor. *See United States v. Colgate & Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919); *see also Reisner v. General Motors Corp.,* 671 F.2d 91, 99–100 (2d Cir.1982). Plaintiffs argue that this rule is inapplicable because Dictaphone was merely a supplier and not a manufacturer of Artec equipment to plaintiffs. The Court finds this argument unpersuasive. *See Copy-Data, supra,* 663 F.2d at 409 (supplier or manufacturer market divisions subject to rule of reason analysis); *Muenster Butane, Inc. v. Stewart Co.,* 651 F.2d 292, 297 (5th Cir.1981). Vertical restrictions aimed at intrabrand competition, whether imposed by a supplier or a manufacturer, may enhance interbrand competition—an objective this Court should encourage. *See Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 54–58, 97 S.Ct. 2549, 2559–61, 53 L.Ed.2d 568 (1977). Moreover, the possibility that intrabrand restrictions will further interbrand competition is heightened, when like the case at bar, there already exists strong competition on the interbrand level. *See Copy-Data, supra,* 663 F.2d at 410; *see also Auburn News Co. v. Providence Journal Co.,* 659 F.2d 273, 278 (1st Cir.1981). In addition, a policy limiting the number of dealers and distributors, whether initiated by a supplier or a manufacturer, usually is expected to increase interbrand competition. *Continental T.V., Inc. v. GTE Sylvania Inc., supra,* 433 U.S. at 58, 97 S.Ct. at 2561; *United States v. Koppers Co.,* 652 F.2d 290, 296 (2d Cir.1981). Therefore, the Court sees no reason to deviate from the settled rule allowing a party to unilaterally terminate a dealer or distributor merely because the party is a "supplier" rather than a "manufacturer."

Taking as true the factual allegations contained in the complaints, *see Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), plaintiffs have failed to establish an anticompetitive purpose behind defendants' conduct. Plaintiffs admit that Artec is a small manufacturer of word processors,[11] thereby militating against a finding that defendants' intrabrand consolidation will adversely affect interbrand competition. *Copy-Data, supra,* 663 F.2d at 410. The complaints merely assert a claim that plaintiffs' dealerships were cancelled— something wholly permissible under the antitrust laws. *See Borger v. Yamaha International Corp., supra,* 625 F.2d at 396–97; *Diehl & Sons, Inc. v. International Harvester Co.,* 426 F.Supp. 110, 118 (E.D.N.Y.1976); *Bay City-Abrahams Brothers, Inc. v. Estee Lauder, Inc.,* 375 F.Supp. 1206, 1214–15 (S.D.N.Y.1974). In addition, the mere fact that defendants revised sales quotas and commission rates after the acquisition of Artec does not amount to a violation of the Sherman Act because a supplier is free to

---

**10.** Plaintiffs strenuously argue that defendants are capable of violating the Sherman Act because Artec and Dictaphone were separate entities before they were acquired by Pitney Bowes. Although plaintiffs recognize that this Circuit has generally limited the application of the "intraenterprise conspiracy" to instances when related corporations actually competed with each other, *see Reisner v. General Motors Corp.,* 511 F.Supp. 1167, 1173 (S.D.N.Y.1981), *aff'd,* 671 F.2d 91 (2d Cir.1982); *Giant Paper & Film Corp. v. Albemarle Paper Co.,* 430 F.Supp. 981, 985 (S.D.N.Y.1977), their complaints are devoid of facts that would even allow the Court to infer that defendants, during the time relevant to this suit, did not function as a "single economic unit," *see Murray v. Toyota Motor*

*Distributors, Inc.,* 664 F.2d 1377, 1379 (9th Cir. 1982). Moreover, because of its ruling *infra* that plaintiffs cannot establish that defendants' conduct was anticompetitive in either effect or purpose, the Court need not address the question left open in *International Railways v. United Brands Co.,* 532 F.2d 231, 240 (2d Cir.1976). Similarly, further discovery with respect to the existence of a conspiracy would be meaningless in view of plaintiffs' failure to establish, taking as true all the factual assertions in the complaints, that defendants' conduct was anticompetitive.

**11.** Word Systems Complaint, ¶ 12; Bunch Complaint, ¶ 13.

establish the terms and conditions under which it will distribute its products. *See Fuchs Sugars & Syrups, Inc. v. Amstar Corp., supra*, 602 F.2d at 1030; *see also Schwimmer v. Sony Corp.*, 677 F.2d 946, 954–55 (2d Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 362, 74 L.Ed.2d 398 (1982).

■ Furthermore, the Court will not find defendants' conduct violative of the Sherman Act because the dealers' termination was incidental to the acquisition of Artec by Pitney Bowes. *See Medical Arts Pharmacy, Inc. v. Blue Cross & Blue Shield Inc., supra*, 675 F.2d at 505–06; *Ark Dental Supply Co. v. Cavitron Corp.*, 323 F.Supp. 1145, 1148 (E.D.Pa.1971), *aff'd*, 461 F.2d 1093 (3d Cir. 1973) (per curiam). The complaints clearly state why Pitney Bowes acquired Artec—to penetrate the market for the manufacturing and marketing of business machines. The complaints fail to allege any basis upon which the Court could find that Pitney Bowes' entry into the "business machine market" would have an anticompetitive effect or purpose. *See Morse v. Swank*, 493 F.Supp. 110, 118 (S.D.N.Y.1980). Accordingly, plaintiffs' antitrust claims are dismissed.

### Breach of Contract

Plaintiffs assert that defendants breached their dealership agreements because plaintiffs were improperly terminated. Defendants move to dismiss these claims because both agreements contain the following clause: "[defendants] shall not be liable to [plaintiffs] by reason of or upon termination of this Agreement for damages or otherwise, whether for the loss of present or prospective commissions or for expenditure, investments, opportunities forgone, or otherwise." [12]

■ Preliminarily, the Court notes that pursuant to the agreements, California law is applicable [13] and that California courts will enforce commercial limitations on liability unless it is established that the limitation is unconscionable. *See Three-Seventy Leasing Corp. v. Ampex Corp.*, 528 F.2d 993, 998 (5th Cir.1976); *Wheeler v. Oppenheimer*, 140 Cal.App.2d 497, 295 P.2d 128 (Cal. Dist.Ct.App.1956). Plaintiffs seek to avoid the effect of the limitation clauses by arguing that they are inapplicable to unlawful termination claims by a party to the agreement. The Court disagrees.

■ Subsection 9.8 of the sales agreements, which contain the limitation clauses, cannot be applied solely to those instances involving a lawful termination of the agreements. Other subsections clearly delineate the instances when defendants or plaintiffs can lawfully terminate the agreements. In addition, these same subsections enunciate the damages recoverable by either party. Accordingly, the Court finds no basis for plaintiffs' assertion that subsection 9.8 only applies to lawful terminations. Moreover, plaintiffs' interpretation of subsection 9.8 is contrary to California law. California courts give the word "terminate," unless otherwise stated, its ordinary meaning when it appears in a contract, that is, termination for any reason—lawful or unlawful. *Western Camps, Inc. v. Riverway Ranch Enterprises*, 70 Cal.App.3d 714, 723–24, 138 Cal.Rptr. 918, 923 (Cal.Ct.App.1977). Accordingly, because plaintiffs failed to establish the unconscionability of the limitation clause, it must be enforced and plaintiffs' breach of contract claims dismissed. [14]

**12.** Word Systems Complaint, Exhibit I, § 9.8; Joint Memo in Opposition, Exhibit A, § 9.8.

**13.** *Id.*, § 12.7; § 12.7 ("This Agreement shall be governed by and construed in accordance with the laws of the State of California.").

**14.** The California legislature has defined unconscionability to mean the "prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power." Cal.Civ.Code, § 1670.5 (West Supp.1982) (citation omitted). The Court also notes that Word Systems' claim that defendants violated California's Franchise Relations Act, Cal.Bus. & Prof.Code §§ 20000–20043 (West Supp.1982), is clearly without merit. This statute is only applicable to franchises "where either the franchisee is domiciled in [California] or the franchised business is or has been operated in [California]." *Id.*, § 20015. Because a franchisee "is a person to whom a franchise is granted," *id.*, § 20002, Word Systems cannot avail itself of the statute's bene-

*Tortious Interference with Business Relationships*

 Plaintiffs claim that defendants interfered with both prospective and actual business relationships causing them damages. Although Word Systems' complaint fails to specify any third parties' contracts with which defendants interfered, Bunch's complaint, broadly construed, asserts that defendants tortiously interfered with a prospective contract with the Western Hotel chain located in Seattle, Washington.[15] To establish tortious interference, plaintiffs must prove (1) a prospective or actual contractual relationship with a third party; (2) an intent to harm plaintiff by preventing the relationship from occurring; (3) the absence of any privilege or justification for defendants' actions; and (4) damages. *See Kennametal, Inc. v. Subterranean Equipment Co.,* 543 F.Supp. 437, 439 (W.D.Pa. 1982); *Kobielnik v. Union Carbide Corp.,* 532 F.Supp. 28, 29–30 (E.D.Pa.1981); *Sadowy v. Sony Corp.,* 496 F.Supp. 1071, 1080 (S.D.N.Y.1980); *American Sanitary Service, Inc. v. Walker,* 276 Or. 389, 394, 554 P.2d 1010, 1013 (1976).

 Word Systems argues that its complaint alleges a valid cause of action because defendants breached their sales agreement with Word Systems. The law, however, is clear that "one contracting party does not have a cause of action against the other for conspiring to breach the contract or *inducing the breach.*" *Ariate Compania Naviera, S.A. v. Commonwealth Tankship Owners, Ltd.,* 310 F.Supp. 416, 421 (S.D.N.Y.1970) (emphasis added); *see Vuksta v. Bethlehem Steel Corp.,* 540 F.Supp. 1276, 1282 (E.D.Pa.1982). Thus, Word Systems' tortious interference claim must be dismissed.

 Bunch's complaint, however, alleges that defendants tortiously interfered with a prospective contractual relationship,

that is, the possible sale to the Seattle hotel chain. While this factual allegation may satisfy the first element of Bunch's claim, *see Jolma v. Steinbock,* 40 Or.App. 657, 668, 596 P.2d 980, 986 (Or.Ct.App.1979), the complaint does not allege that defendants specifically intended to induce the breach of this prospective agreement, *see Sadowy v. Sony Corp., supra,* 496 F.Supp. at 1080; *American Sanitary Service, Inc. v. Walker, supra,* 276 Or. at 394, 554 P.2d at 1013; or that Bunch would have completed the contract "but for" defendants' tortious interference, *see Luisi v. Bank of Commerce,* 252 Or. 271, 274–75, 449 P.2d 441, 442–43 (1969); *see also Pinnacle Books, Inc. v. Harlequin Enterprises,* 519 F.Supp. 118, 121 n. 1 (S.D. N.Y.1981); thus, Bunch's tortious interference claim also must be dismissed.

*Civil Conspiracy*

 Plaintiffs also allege that defendants conspired to fraudulently induce plaintiffs to continue as Artec dealers after defendants secretly agreed to terminate plaintiffs and wrongfully reap the benefits of their labors. Defendants argue that plaintiffs have failed to state an action for civil conspiracy for two reasons: *First,* defendants contend that they cannot conspire to breach the contracts in question because several of the contracting parties are alleged coconspirators. *Second,* defendants contend that these claims must be dismissed as a matter of law because the alleged conspirators consist of a parent corporation, one of its divisions and a wholly-owned subsidiary. Plaintiffs assert that these contentions are legally without merit because the alleged conspiracy was completed before Artec became a division of Pitney Bowes.

 Assuming *arguendo* that defendants' alleged conspiracy was complete

---

fits. Similarly, the Court finds Word Systems' claim that its dealership agreement was renewed pursuant to the doctrine of promissory estoppel to be without merit. California requires a claim of detrimental reliance, which Word Systems has not alleged. *See Markt v. Ro-Mart, Inc.,* 471 F.Supp. 1292, 1298 (N.D.Cal.

1979); *see also Rivera v. City of Carson,* 117 Cal.App.3d 718, 727, 173 Cal.Rptr. 4, 9 (Cal.Ct. App.1981) (as a general rule estoppel must be specifically pleaded).

**15.** Bunch Complaint, ¶¶ 50–52.

before Artec was acquired by Pitney Bowes, plaintiffs fail to state a claim upon which relief may be granted.[16] Applying Pennsylvania law to the Word Systems' claims,[17] it is clear that one party cannot conspire with another party to breach their contract. *See Jagielski v. Package Machine Co.*, 489 F.Supp. 232, 233 (E.D.Pa.1980); *O'Neill v. ARA Services, Inc.*, 457 F.Supp. 182, 188 (E.D.Pa.1978). Prior to being acquired by Pitney Bowes, Artec and plaintiffs were the only parties to the contracts in question—making any pre-acquisition conspiracy claims not actionable. Moreover, after the acquisition of Artec, Dictaphone assumed Artec's sales contracts and became a party to the contract; thus, any post-acquisition conspiracy theory is similarly not actionable. *See generally Realco Services, Inc. v. Holt*, 479 F.Supp. 880, 885 (E.D.Pa.1979); *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 212–13, 412 A.2d 466, 473 (1979). With respect to Bunch, because he has not alleged a statutory basis or an unusual circumstance in support of his civil conspiracy claim, he cannot maintain this claim as an independent tort under Oregon law. *See Bonds v. Landers*, 279 Or. 169, 175, 566 P.2d 513, 516 (1977). In addition, Oregon like Pennsylvania does not recognize a conspiracy between a corporation and its agents, employees or subsidiaries. *See Galego v. Knudsen*, 282 Or. 155, 578 P.2d 769 (1978); *Bonds v. Landers, supra*, 279 Or. at 174, 566 P.2d at 516.

*Trade Libel*

Plaintiffs further allege that defendants published, either orally or in writing, words which unfairly characterized the integrity and business reputation of plaintiffs. Specifically, plaintiffs contend that their customers were notified that plaintiffs were going to be terminated as Artec dealers and that customer service would significantly improve after Dictaphone began to operate the branch offices. Defendants contend that both complaints are fatally defective because they do not allege that these statements are false.

■ Initially, the Court notes that the parties agree that Pennsylvania law applies to Word Systems' claims and Oregon law applies to Bunch's claims. The parties, however, disagree as to what constitutes trade libel in Pennsylvania and Oregon. Relying on *Corabi v. Curtis Publishing Co.*, 441 Pa. 432, 273 A.2d 899 (1971), Word

---

**16.** Defendants assert that the "weight of contacts" test, *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 240 N.Y.S.2d 743 (1963), requires the Court to apply New York rather than Pennsylvania or Oregon law to plaintiffs' civil conspiracy claims. *See Rudin v. Dow Jones & Co.*, 510 F.Supp. 210, 216–17 (S.D.N.Y.1981). Plaintiffs, on the other hand, contend that because conspiratorial acts may have occurred in New York, California or Connecticut, the Court must apply Oregon law to Bunch's claim and Pennsylvania law to Word Systems' claim. The Court notes that neither New York, *see Vom Lehn v. Astor Art Galleries, Ltd.*, 86 Misc.2d 1, 7–8, 380 N.Y.S.2d 532, 538 (Supt.Ct.1976), nor Oregon, *see Bonds v. Landers*, 279 Or. 169, 175, 566 P.2d 513, 516 (1977), recognize civil conspiracy as an independent cause of action. Moreover, contrary to plaintiffs suggestion, claims of civil conspiracy have been narrowly interpreted by Pennsylvania courts. *See Franklin Music Co. v. American Broadcasting Co.*, 616 F.2d 528, 549 (3d Cir.1979) (Sloviter, J., concurring) (footnotes omitted):

[I]t is questionable whether one should be permitted to recover for both the substantive tort and the conspiracy to engage in the substantive tort. We have found no Pennsylvania case which permits recovery for both, and no discussion of the issue in the Pennsylvania cases. The cases relied on ... as establishing the general tort of civil conspiracy in Pennsylvania are all cases in which it appears that plaintiffs sued only for the conspiracy, without also claiming damages for the substantive tort.

The cases cited by Word Systems in support of its claim that Pennsylvania recognizes an independent tort for civil conspiracy were characterized by Judge Sloviter as falling in the latter group of cases. *Id.* at 549 n. 14.

**17.** Pennsylvania law is applicable to Word Systems' civil conspiracy claim solely because, for the purposes of this motion, the Court must consider as true all the allegations in Word Systems' complaint. Given a more complete record, the Court may have accepted defendants' argument that New York law governs Word Systems' and Bunch's claims. The Court believes, however, that the result reached herein would be the same whether the Court applied Pennsylvania, Oregon or New York law.

Systems argues that "falsity is *not* an element of a cause of action for libel in Pennsylvania." *Id.* at 439, 273 A.2d at 908 (emphasis in original). Recent decisions of both the Pennsylvania Supreme Court and the Third Circuit, however, have convinced the Court that *Corabi* is no longer good law. *See Steaks Unlimited, Inc. v. Deaner,* 623 F.2d 264, 274–75 n. 49 (3d Cir.1980); *Dunlap v. Philadelphia Newspapers, Inc.,* 301 Pa. Super. 475, 487–88, 448 A.2d 6, 13 (1982) (plaintiff bears the burden of proving falsity in Pennsylvania libel actions). Accordingly, Word Systems' complaint fails to state a claim for trade libel under Pennsylvania law. Because this change occurred subsequent to the filing of Word Systems' complaint, the Court will allow Word Systems to amend its complaint with respect to its trade libel claim.

■■■■ Although the Court is allowing Word Systems to amend its complaint, several observations are appropriate. *First,* to establish trade libel Word Systems must prove that defendants' statements blackened Word Systems' business reputation and clearly implied that Word Systems' conduct was incompatible with proper business activities. *Cosgrove Studios & Camera Shop, Inc. v. Pane,* 408 Pa. 314, 317, 182 A.2d 751, 753 (1962). *Second,* while Pennsylvania allows a party to rely on "innuendo" to establish trade libel, the innuendo must support the conclusion that plaintiff is unfit to perform his occupation. *See Reichman v. Bureau of Affirmative Action,* 536 F.Supp. 1149, 1180 (M.D.Pa.1982); *Rannels v. S.E. Nichols, Inc.,* 447 F.Supp. 417, 421 (E.D.Pa.1978), *rev'd on other grounds,* 591 F.2d 242 (3d Cir.1979).

Assuming that Word Systems can allege that defendants' statements were false, the Court has serious doubts as to whether the statements are actionable at all. Nowhere in the complaint is there an allegation that third parties refused to do business with Word Systems solely because they had heard or read that Word Systems was being terminated and replaced by Dictaphone, as was the case in *Cosgrove Studio & Camera Shop, Inc. v. Pane, supra,* 408 Pa. at 318–19,

182 A.2d at 753. Moreover, because a dealer can be terminated for several reasons other than for poor performance, Word Systems' reliance on both *Cosgrove Studio & Camera Shop, Inc. v. Pane, supra,* and *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 304, 167 A.2d 472, 476 (1960), may be misplaced. *See Franklin Music Co. v. American Broadcasting Co.,* 616 F.2d 528, 541 (3d Cir.1979).

■■■■ With respect to Bunch, Oregon law is clear—falsity is a necessary element of a trade libel claim. *Beecher v. Montgomery Ward & Co.,* 267 Or. 496, 501, 517 P.2d 667, 670 (1973). Thus, Bunch's complaint fails to state a cause of action for trade libel. Moreover, assuming that defendants' statements concerning Bunch are false, the Court is convinced that they are not actionable. *See, e.g., Martin v. Reynolds Metals Co.,* 224 F.Supp. 978 (D.Or. 1963), *appeal dismissed,* 336 F.2d 876 (9th Cir.), *aff'd on other grounds,* 337 F.2d 780 (9th Cir.1964); *Wheeler v. Green,* 286 Or. 99, 593 P.2d 777 (1979).

### Unfair Competition

Bunch also asserts that defendants engaged in acts of unfair competition, although the complaint fails to specify the acts or omissions which constitute the tortious conduct. Bunch alleges, in conclusory language, that defendants' acts have caused him to suffer lost sales, revenues and profits. Defendants move to dismiss this claim because Oregon allegedly limits claims of unfair competition to trade name misappropriation, *see Photo & Sound Co. v. Corvallis,* 291 Or. 105, 111, 628 P.2d 733, 737 (1981); *Western Bank v. Western Bancorporation,* 47 Or.App. 191, 194, 617 P.2d 258, 260 (Or. App.1980), a claim not asserted in Bunch's complaint.

■■■■ While the Court agrees with defendants that unfair competition is usually limited to trade name misappropriation, this tort is an "amorphous cause of action . . . encompassing 'any form of commercial immorality,' or simply as 'endeavoring to reap where [one] has not sown;' it is taking 'the

skill, expenditures and labors of a competitor' and 'misappropriating for the commercial advantage of one person ... a benefit or "property" right belonging to another.' The tort is adaptable and capacious." *Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704, 710 (2d Cir.1982) (quoting *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1105 (2d Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). Although the Court is unaware of an Oregon decision construing the tort of unfair competition in a similar manner, case law indicates that the tort is not as narrow as defined by defendants. *See American Republic Insurance v. Union Fidelity Life Insurance Co.*, 470 F.2d 820 (9th Cir.1972) (misappropriation of customer lists); *Western Alliance Corp. v. Western Reliance Corp.*, 57 Or.App. 263, 643 P.2d 1382, 1389 (Or.Ct.App.1982) (improper termination of agency agreement).

■ Although the allegations contained in his unfair competition claim fail to allege the means by which defendants misappropriated Bunch's property or benefits, his assertions with respect to the loss of the Western Hotel sale may constitute a basis for an unfair competition claim. Accordingly, Bunch will be permitted to further amend his complaint with respect to his unfair competition claim. The Court points out that the amended complaint *must* specify (1) the acts or omissions by defendants that proximately caused the misappropriation and (2) the property or benefit misappropriated—mere allegations that Bunch has suffered lost sales or revenues will not suffice.

## CONCLUSION

In accordance with the foregoing, defendants' motion to dismiss Word Systems' complaint is granted with respect to Counts I, II, III and IV. Count V is dismissed without prejudice to Word Systems filing an amended complaint consistent with this Memorandum and Order within fourteen (14) days. Fed.R.Civ.P. 12(b)(6).

* Final Typed Copy of Opinion Filed in Draft

Defendants' motion to dismiss Bunch's complaint is granted with respect to Counts I, II, III, IV and VI. Count V of the complaint is dismissed without prejudice to Bunch filing a further amended complaint consistent with this Memorandum and Order within fourteen (14) days. Fed.R.Civ.P. 12(b)(6).

Unless objected to within fourteen (14) days of the date of this Memorandum and Order, the Court hereby orders that these cases be consolidated for the purposes of pretrial discovery. Fed.R.Civ.P. 42(a). Parties are directed to complete all discovery by May 27, 1983, at which time the Court will consider these matters ready for trial.

SO ORDERED.