907 F.2d 151
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LOU BUCH ASSOCIATES, INC., Plaintiff-Appellant,
v.
SANYO ELECTRIC, INC., Defendant-Appellee.
 No. 88-1164.
 United States Court of Appeals, Sixth Circuit.
 June 27, 1990.
 
 Before MERRITT, Chief Judge, DAVID A. NELSON, Circuit Judge, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This diversity case, which was removed from our active docket pending issuance of a supplemental opinion by the district court, has now been restored to the docket. In its supplemental opinion the district court clarified an earlier finding as to whether the defendant had interfered in bad faith with the plaintiff's performance of the parties' sales representation agreement. Concluding that there had been no bad faith interference, the district court reaffirmed its earlier grant of summary judgment in favor of the defendant. We find no error in this, and we shall affirm the judgment.
 
 
 2
 Following issuance of the supplemental opinion, the plaintiff requested an opportunity to file an additional brief in support of the position that it had raised a genuine issue of fact sufficient to avoid summary judgment. Because the case was fully briefed and argued before we issued our request for a supplemental opinion, however, and because the supplemental opinion simply removed a possible ambiguity in the district court's earlier findings, we see no need for additional briefing.
 
 
 3
 The procedural and factual background of the case is summarized in our earlier opinion, issued on May 22, 1989, and in the opinions of the district court. Without repeating what has been said there, we turn directly to the issues that remain before us.
 
 
 4
 Plaintiff LBA claims that Sanyo violated the contract by failing to fill LBA's orders and by showing favoritism in shipping to other sales representatives. But if the contract is enforceable, there can be no liability for that of which LBA complains. The contract explicitly disclaims any liability on Sanyo's part for failure to fill orders (Sec. 17.3), and it gives Sanyo the "sole and absolute discretion" to allocate the supply of its products "to its customers or otherwise without any liability to [LBA]" (Sec. 6.3).
 
 
 5
 LBA contends that the agreement is an unenforceable contract of adhesion. Under California law, a contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Graham v. Scissor-Tail, Inc. 28 Cal.3d 807, 817, 623 P.2d 165, 171, 171 Cal.Rptr. 604, 610 (1981) (quoting Neal v. State Farm Ins. Co., 188 Cal.App.2d 690, 694, 10 Cal.Rptr. 781). Such a contract is not necessary unenforceable. A contract of adesion will be enforced, subject to two exceptions: "The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or 'adhering' party will not be enforced against him. The second ... is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or 'unconscionable'." Graham, supra, 171 Cal.Rptr. at 612 (citations omitted).
 
 
 6
 Nothing in the record suggests that the terms of LBA's contract were outside the company's "reasonable expectations." The provisions about which LBA now complains were contained in a 1976 contract that was superceded and replaced by the contract at issue here. This datum does not indicate that the contract's provisions went beyond the reasonable expectations LBA had in 1983, when the replacement contract was signed, and we have seen nothing that does so indicate. As the district court noted, there is no evidence that the provisions in question would not have been present in any contract LBA might have signed with a manufacturer of similar goods.
 
 
 7
 As to unconscionability, the California law seems to contain an element of circularity. To be unconscionable, under California law, a contract must indicate " 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " A & M Produce Co. v. FMC Corp., 135 Cal.App.3d 473, 486, 186 Cal.Rptr. 114, 121 (1982) [quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C.Cir.1965) (footnote omitted) ]. The absence-of-meaningful-choice element, or "procedural unconscionability," contains two sub-elements: "oppression" and "surprise." "Oppression" means little more than the element of which it is a part: "an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.' " A & M Produce, supra, 186 Cal.Rptr. at 122. "Surprise" means "the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." Id. The concept of unconscionability was developed to protect legally unsophisticated consumers, a class of persons more likely to be subject to oppression and surprise than a company in LBA's position. See Williams v. Walker-Thomas Furniture Co., supra.
 
 
 8
 A number of the factors cited by the A & M Produce court as indicating procedural unconscionability are not present in this case. Neither LBA nor its representative was new to the electronics products business or to the sort of contract at issue. Mr. Buch, the President of LBA, had 25 years in the business. Sanyo sent the proposed contract to Lou Buch with a cover letter saying "[w]e discussed most of the important paragraphs in this Agreement. Please review the full Agreement and confer with your attorney if you wish." The document was sent out about a month before it was to become effective, so LBA had ample time to review it. It is hard to see how its terms could have come as a "surprise" to LBA, most of those terms having been included in the agreement that preceded it. Moreover, a 60-day termination clause contained in the initial agreement was removed at LBA's instance, suggesting that there was at least some room for negotiation between the parties. We cannot say that the contract was procedurally unconscionable.
 
 
 9
 Neither can we say that the contract was substantively unconscionable as of the time the contract was made. (Perdue v. Crocker National Bank, 38 Cal.3d 913, 702 P.2d 503, 216 Cal.Rptr. 345 (1985), teaches that the time of contracting is the time as of which this evaluation must be undertaken). LBA asserts that the contract was unconscionable both insofar as it authorized termination for failure to meet sales quotas that would have been met had Sanyo filled all its orders and insofar as it ruled out any recovery of damages caused by such a termination. But the prohibition against recovery of damages on termination applied to a termination by either party; each party agreed to assume the risk of a termination by the other. In any risk allocation situation the party on whom the major share of the loss falls when the risk materializes is saddled with a burden it might not have wished to accept had the result been predictable in advance. Here LBA gambled that Sanyo would find it both advantageous and feasible to fill LBA's orders promptly. Although it lost its gamble, LBA freely chose to undertake the risk--and a court should not retroactively relieve LBA of the consequences of its bargain. The concept of unconscionability is not to be used for the "disturbance of allocation of risks because of superior bargaining power." Cal.Civ.Code Sec. 1670.5, Comment 1 (West Supp.1982).
 
 
 10
 LBA also claims that its sales agreement should not have been terminated when those of other sales representatives who failed to meet their quotas were not terminated. The factually similar case of Bunch v. Artec International Corporation, 559 F.Supp. 961 (S.D.N.Y.1983), is instructive in this connection. In Bunch, which also arose under California law, the court was confronted with a contention that the defendants wrongfully terminated the plaintiffs' word processing equipment dealership. The contract contained a provision absolving the defendants from liability "by reason of or upon termination of this Agreement for damages or otherwise...." Id. at 968. The court found that there was no basis "for plaintiffs' assertion that [the limitation clause] only applies to lawful terminations.... California courts give the word 'terminate,' unless otherwise stated, its ordinary meaning when it appears in a contract, that is, termination for any reason--lawful or unlawful. Western Camps, Inc. v. Riverway Ranch Enterprises, 70 Cal.App.3d 714, 723-24, 138 Cal.Rptr. 918, 923 (Cal.Ct.App.1977)." Id.
 
 
 11
 In the case at bar, similarly, the contract expressly allows Sanyo to "immediately terminate this agreement upon written notice to that effect if ... [LBA] fails over the course of two consecutive quarters to meet the overall sales quota which is assigned to [it]...." (Sec. 11.4). LBA did fail over the course of two consecutive quarters to meet its quota. If the Bunch court was reading California law correctly, it matters not whether Sanyo chose to exercise selectivity in terminating sales representative agreements. Nothing in the contract prevented it from doing so.
 
 
 12
 Finally, LBA contends that Sanyo broke an implied covenant of good faith and fair dealing by failing to fill LBA's orders, by setting quotas "not possibly attainable by Plaintiff," and by giving other sales representatives favored treatment. LBA contends that on this issue there exist triable issues of material fact that preclude summary judgment.
 
 
 13
 California has adopted Sec. 1-203 of the Uniform Commercial Code, which states that "[e]very contract ... imposes an obligation of good faith in its performance or enforcement." Cal.Comm.Code Sec. 1203 (West 1984). Bad faith is not to be presumed, and in its supplemental opinion the district court made it clear that it did not believe LBA had made the requisite factual showing on this issue. The court determined that LBA offered mere allegations, and allegations alone are not adequate to resist a summary judgment motion. See Celotex Corp. v. Catrett, 477 U.S. 317, (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Although the record indicates that Sanyo did not ship all the requested products, LBA points to no facts suggesting that either the size of the quotas or the failure to ship resulted from bad faith on Sanyo's part. Conclusory allegations in affidavits by LBA's own representative do not demonstrate the existence of a triable issue of material fact in this regard.
 
 
 14
 The judgment is AFFIRMED.
 
 
 15
 MERRITT, Chief Judge, concurring in part and dissenting in part.
 
 
 16
 I agree with the Court's disposition of this diversity case in all respects except I would remand the case to the District Court for trial on the merits on the issue of good faith, an issue dealt with in the last section of the Court's opinion. It appears to me that the present record raises a dispute of material fact with regard to this issue. The distributor Sanyo cancelled a number of customer orders and allegedly did not ship other orders on a timely basis, thereby, according to the terminated dealer, making it impossible to meet the quotas in question. The present record, it seems to me, is in a state of some confusion, and I cannot say with the confidence necessary to avoid a trial on the merits that there is no legitimate dispute of material fact concerning Sanyo's conduct in failing to produce and ship orders and then terminating its dealer. It may very well be that the fault lies with Sanyo in failing to produce and ship and that its termination of the dealer is therefore in bad faith.